(July 9, 2010)

In the Matter of ANTHONY J. MACULA, Appellant, v BOARD OF EDUCATION, GENESEO CENTRAL SCHOOL DISTRICT, et al., Respondents. [906 NYS2d 193]—

Appeal from a judgment (denominated order) of the Supreme Court, Livingston County (Robert B. Wiggins, A.J.), entered July 29, 2009 in a proceeding pursuant to CPLR article 78. The judgment dismissed the petition.

It is hereby ordered that the judgment so appealed from is affirmed without costs.

Memorandum: Petitioner commenced this CPLR article 78

proceeding seeking, inter alia, to annul the determination denying his request to set up a "truth-in" table at Geneseo High School (School) on "college days," when representatives of colleges, universities and the military are allowed into the School for recruitment purposes. The primary purpose of petitioner's proposed "truth-in" table was to provide students with negative information about military service that petitioner believed they should consider before deciding whether to enlist. Petitioner also sought to present materials about peace-orientated organizations, such as AmeriCorps and the Peace Corps, and to observe military recruiters while in the School. Although respondents denied petitioner's request for access to the School, they agreed to post in the guidance office a two-page document provided by petitioner entitled "Ten Points to Consider Before You Sign a Military Enlistment Agreement," a copy of which is also given by the School to every student who requests information about military service. Petitioner thereafter commenced this proceeding alleging, inter alia, that respondents violated his right of free speech under the State and Federal Constitutions by refusing to allow him to participate in college days. Supreme Court dismissed the petition, finding that respondents appropriately limited School access to "groups or schools with specific programs," which did not include petitioner, and that petitioner had no right to observe military recruiters. On a prior appeal, we reversed the judgment and remitted the matter for further development of the record, which we concluded "lack[ed] sufficient information to enable a court to determine whether the determination was arbitrary and capricious or whether petitioner's constitutional rights were violated" (*Matter of Macula v Board of Educ., Geneseo Cent. School Dist.*, 61 AD3d 1338 [2009]). Upon remittal, the record was supplemented primarily by petitioner, who submitted to the court copies of materials he intended to present to students, and the court again dismissed the petition. We affirm.

We note at the outset that, although petitioner advances numerous contentions on appeal, he asserted only two causes of action. The first cause of action alleges that the denial of petitioner's request to set up a "truth-in" table violated petitioner's constitutional right of free speech. According to petitioner, respondents engaged in viewpoint discrimination by allowing military recruiters into the School but prohibiting him from setting up a "truth-in" table. The second cause of action alleges that the denial of petitioner's request to observe the military recruiters in the School is arbitrary and capricious. We conclude that neither cause of action has merit.

With respect to the first cause of action, petitioner concedes

that the School is a nonpublic forum in the context of its college days. Respondents may therefore control access to the School "based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral" (*Cornelius v NAACP Legal Defense & Ed. Fund, Inc.*, 473 US 788, 806 [1985]; *see Perry Ed. Assn. v Perry Local Educators' Assn.*, 460 US 37, 49 [1983]; *Peck ex rel. Peck v Baldwinsville Cent. School Dist.*, 426 F3d 617, 633 [2005], *cert denied* 547 US 1097 [2006]). In our view, the reasons offered by respondents for denying petitioner's request to set up a "truth-in" table at the School on college days are reasonable. When respondents denied his request, they explained to petitioner that access to the School on college days is limited to representatives of postsecondary academic institutions and the military, and petitioner is not a representative of any college or university or affiliated with the military. In addition, it is apparent that petitioner's primary purpose in appearing on college days is to provide students with negative information about military service, and respondents reasonably seek to avoid the potential for disruption that may arise from granting access to those who seek to discourage students from pursuing a particular postsecondary option. To the extent that petitioner also seeks to provide students with information about AmeriCorps and other similar organizations, respondents have asserted that he is free to do so during career day, when students are presented with information about particular occupations and careers.

Contrary to the contention of petitioner, respondents' determination to allow military recruiters but not him into the School on college days was viewpoint neutral. Respondents allege without contradiction that the reason they allow military recruiters into the School on college days is that they are compelled to do so by the federal No Child Left Behind Act of 2001 ([NCLB] 20 USC § 6301 *et seq.*, as added by Pub L 107-110, 115 US Stat 1425, 1439). Pursuant to that statute, a school district may lose all federal funding if it fails to afford to the military access to its schools similar to that which is granted to colleges and universities, and federal funding is a significant portion of respondents' budget. Thus, it cannot be said that respondents invited the military to participate in college days because they agreed with the mission or philosophy of the military and denied access to those espousing contrary views. We note that, pursuant to the NCLB, a school district is also required to provide student contact information to military recruiters. If the school district were to deny a request for such information from a nonmilitary employer or organization, it cannot be said that the school district would be engaging in viewpoint discrimination.

Petitioner relies heavily on *Searcey v Crim* (815 F2d 1389, 1393-1395 [1987]), in which the United States Court of Appeals for the Eleventh Circuit held that the defendant school district, which allowed military recruiters in its high school on career day, could not deny similar access to the Atlanta Peace Alliance (APA). *Searcey* is factually distinguishable from this case for several reasons. First, the forum at issue in *Searcey* was career day, which is different from the college days at issue here (*id.* at 1390 n 3). Second, there was compelling, if not overwhelming, evidence in *Searcey* that the school district's decision to deny access to the APA was based on a desire to suppress its views, which members of the school board deemed unduly controversial (*id.* at 1390 n 3, 1394-1395). Here, in contrast, there is no evidence that respondents seek to suppress petitioner's views. Indeed, respondents have no objection to petitioner appearing on career day to present information about AmeriCorps and other similar organizations, and they have made ample use of the document entitled "Ten Points to Consider Before You Sign a Military Enlistment Agreement" provided by petitioner. Those actions belie an intent to discriminate against petitioner based upon his viewpoint. Finally, unlike in *Searcey*, respondents have a legitimate reason for allowing access to military recruiters but not to peace activists or organizations, i.e., the reluctance to lose all federal funding under the NCLB, which was enacted after the school board in *Searcey* denied access to the APA.

Although not directly on point, *Rumsfeld v Forum for Academic & Institutional Rights, Inc.* (547 US 47 [2006]) is instructive. That case involved a challenge by various law schools to the Solomon Amendment (10 USC § 983), which requires institutions of higher education to provide military recruiters the same access afforded to nonmilitary recruiters. The law school plaintiffs opposed the military's policy concerning homosexuals and contended that such policy conflicted with the schools' own policies prohibiting discrimination based on sexual orientation. The United States Supreme Court rejected the law schools' challenge, concluding that the law schools were "not speaking when they host[ed] interviews and recruiting receptions" (*Rumsfeld*, 547 US at 64). The Court further concluded that "[n]othing about recruiting suggests that law schools agree with any speech by recruiters[ ] and [that] nothing in the Solomon Amendment restricts what the law schools may say about the military's policies" (*id.* at 65). The Court stated that it had previously "held that high school students can appreciate the difference between speech a school sponsors and speech the school permits because legally required to do so, pursuant to an equal access policy" (*id.*). Here, as in *Rumsfeld*, respondents are

not endorsing the military's message or creating a forum for military speech by complying with the statutory mandate of the NCLB, nor are respondents necessarily expressing disagreement with the views of petitioner by denying his request to set up a "truth-in" table during college days.

With respect to the second cause of action, we reject the contention of petitioner that respondents' denial of his request to observe military recruiters in the School is arbitrary and capricious. Petitioner acknowledged during a hearing on the petition that he wanted to observe the military recruiters so that he could "mirror" their actions. We thus conclude that the request of petitioner is related to his other request to present information during college days that, for the reasons stated above, was properly denied. In any event, respondents do not permit unrestricted and unlimited access to the School to nonstudents, and their refusal to allow petitioner to observe military recruiters in the School so that he could perfect his counter-recruitment efforts is rational.

All concur except Fahey, J., who dissents and votes to reverse in accordance with the following memorandum.

Fahey, J. (dissenting). I respectfully dissent. The determination of respondents violated petitioner's constitutional right to free speech and was arbitrary and capricious.

This case had its genesis in petitioner's request, inter alia, to set up a table at Geneseo High School (School) that proposed alternatives to and discussed the drawbacks of a military career. According to respondents, the "tabling" done by military recruiters is essentially the same as that done by college recruiters at the School. Recruiters sit at tables near the School cafeteria with literature on display, and the recruiters are available to speak with students who inquire about the college or branch of the military that each recruiter represents.

In the petition by which this proceeding was commenced, petitioner, who is apparently a professor at the State University of New York College at Geneseo, stated that he had children attending the School and described himself as an "active participant in support of school activities," as well as an active member of the Geneseo Central PTSA. Petitioner's purpose in seeking tabling access was threefold. As set out in his November 26, 2007 letter to the Superintendent of the Geneseo Central School District (School District), respondent Timothy Hayes, requesting tabling access, petitioner explained that he sought to provide students with "[i]nformation critical for making informed decisions about military enlistment"; "[p]eace[-oriented] educational and career opportunities and alternatives to military ser-

vice"; and "[i]nformation about conscientious objection, ethics and utility of war, [and] draft registration."

In that letter, petitioner also recognized the "responsibility [of respondents] to provide a safe, healthy learning environment for the students confided to its care," and he noted that he did not seek permission to engage in activity "that would disrupt or interfere with the vital education of [the] children." Rather, petitioner sought to "broaden and deepen students' critical thinking about their career options," and he posited that those "students do not need to be protected from the respectful and factual presentation of career options and alternatives." Petitioner further noted that it was "not [his] intent to denigrate or to criticize the military as a career choice" and, instead, he sought "to provide students with information and tools to allow them to compare alternatives and options and to make fully-informed decisions about their futures." Interestingly, petitioner also indicated that the access he sought was provided to others locally in the Rochester City School District and Hilton Central School District.

Hayes denied petitioner's request by a letter in which Hayes stated that petitioner would not be permitted the same type of access afforded to higher educational agencies and civilian employers, as well as to military recruiters under the provisions of the No Child Left Behind Act of 2001 ([NCLB] 20 USC § 6301 *et seq.*, as added by Pub L 107-110, 115 US Stat 1425, 1439), because the School District "does not intend to provide access to individuals or groups wishing to promote a specific point of view in opposition to any of the institutions of higher education or employers [that it] invite[s] onto [its] campus, whether civilian or military." That letter did not explain that a local educational agency accepting assistance under the NCLB "shall provide military recruiters the same access to secondary school students as is provided generally to post[-]secondary educational institutions or to prospective employers of those students" (20 USC § 7908 [a] [3]). In addition, petitioner's request was summarily denied by respondent Board of Education of the School District (Board of Education). The correspondence from the Board of Education denying petitioner's request for tabling accommodations also indicates that petitioner's request to observe military tabling at the school was denied.

Petitioner subsequently commenced this CPLR article 78 proceeding seeking, inter alia, to annul the determination denying his tabling request. Supreme Court dismissed the petition and, on a prior appeal, we concluded that the record "lack[ed] sufficient information to enable a court to determine whether

the determination was arbitrary and capricious or whether petitioner's constitutional rights were violated," and we therefore remitted the matter for further development of the record (*Matter of Macula v Board of Educ., Geneseo Cent. School Dist.*, 61 AD3d 1338 [2009]). "We note[d] in particular that the record lack[ed] evidence concerning what, if any, criteria respondents employ[ed] in determining who may present information at career days held at the School, as well as a specific description of the information that petitioner sought to present at the School with respect to career alternatives to military service" (*id.*).

Upon remittal, petitioner supplemented the record by submitting evidence indicating that he was designated by the Genesee Valley Citizens for Peace to be the "truth-in military recruitment tabling representative for [the] School" and that the "Peace Action and Education" group had set up displays in the Rochester City School District, as well as in other school districts, including the Rush-Henrietta Central School District and Hilton Central School District. Petitioner also submitted several examples of literature for tabling, including a pamphlet providing background information on AmeriCorps; a document entitled, "Ten Points to Consider Before You Sign a Military Enlistment Agreement" (hereafter, Ten Points document) prepared by the American Friends Service Committee; information directed to "youth facing draft registration," which considered the absence of economic benefit in military service; information on the military's Delayed Entry Program; a list of "truth[s] about what recruiters promise" prepared by Iraq Veterans Against the War; and a list of examples of careers in peacemaking and social change. Petitioner also submitted a picture prototype of his tabling setup, which revealed that petitioner intended to present pamphlets regarding careers in social change, as well as information regarding "facts about military life."

Respondents, in turn, supplemented the record by submitting the affidavit of Hayes indicating that the School District does not have a written policy expressly addressing access to the School by college or military recruiters. In addition, he asserted that the only criteria for participation in a "career day" at the School are that the parent volunteer be willing to talk to students about his or her job or career and that the parent volunteer be approved by the guidance office. According to Hayes, however, petitioner did not ask to participate in a career day at the School but, rather, he sought access to the School during a time of college and military recruiting. Hayes indicated that the

School District conducts a career day for fifth through seventh grade students and participates in a BOCES-sponsored career day for tenth grade students that is organized by BOCES and is held at a location other than the School.

Hayes further stated in his affidavit that the criteria employed in determining who may present information to "students about post[-]secondary education and career opportunities have been (1) whether the party will present information that is consistent with the . . . School's guidance curriculum and (2) with respect to the military, the requirements of [the] NCLB." The record does not contain any "guidance curriculum," and Hayes only hinted at what that curriculum might entail in averring that the School District "allows college recruiters access to students in the . . . School to carry out its guidance curriculum, specifically by allowing students direct access to college representatives so that they may learn about what participating colleges have to offer them."

Hayes also averred that petitioner did "not qualify for access to [the School's] students under [the School District's] guidance curriculum to conduct the activities he wants to conduct" because petitioner does not represent an employer or an institution of postsecondary education. Likewise, because petitioner was not a representative of a branch of the military, Hayes stated that he did not qualify under the NCLB or any other statute for tabling access at the School. Of the printed materials petitioner sought to have disseminated at the School, only the two-page Ten Points document was approved for distribution by the School.

In my view, the court erred in again dismissing the petition. It is undisputed that, while constitutional rights of freedom of expression apply with equal force within schools (*see Tinker v Des Moines Independent Community School Dist.*, 393 US 503, 506 [1969]), it cannot be said "that students, teachers[ ] or anyone else has an absolute constitutional right to use all parts of a school building or its immediate environs for . . . unlimited expressive purposes" (*Grayned v City of Rockford*, 408 US 104, 117-118 [1972]). Thus, any free speech analysis with regard to the existence of a right to access a school for expressive purposes depends on the character of the school property. In *Perry Ed. Assn. v Perry Local Educators' Assn.* (460 US 37 [1983]), the United States Supreme Court recognized three categories for purposes of free speech analysis: (1) public forums, such as streets and parks, where limitations on expressive activity must be "necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end" (*id.* at 45); (2) limited public

forums, which have been opened by the state "for use by the public as a place for expressive activity" (*id.*) and are subject to the same standard as public forums (*see id.* at 46); and (3) nonpublic forums, which are "not by tradition or designation a forum for public communication" and are governed by different standards than the first two categories (*id.*).

Nonpublic forums are usually not held open to the general public, and "the state may reserve [a nonpublic] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and [does] not [constitute] an effort to suppress expression merely because public officials oppose the speaker's view" (*id.*; *see Cornelius v NAACP Legal Defense & Ed. Fund, Inc.*, 473 US 788, 806 [1985]; *Postal Service v Council of Greenburgh Civic Assns.*, 453 US 114, 131 n 7 [1981], *appeal dismissed and cert denied* 453 US 917 [1981]). With specific regard to schools, the Supreme Court has determined school internal mail facilities to be nonpublic forums (*see Perry Ed. Assn.*, 460 US at 46-47), as well as student newspapers (*see Hazelwood School Dist. v Kuhlmeier*, 484 US 260, 267-270 [1988]). In addition, federal courts have determined that bulletin boards constitute nonpublic forums (*see Downs v Los Angeles Unified School Dist.*, 228 F3d 1003, 1016-1017 [9th Cir 2000], *cert denied* 532 US 994 [2001]), as well as sports activities (*see Hone v Cortland City School Dist.*, 985 F Supp 262, 271 [ND NY 1997]) and school "career days" (*see Searcey v Harris*, 888 F2d 1314, 1318-1319 [11th Cir 1989]).

The parties appear to agree that the School is a nonpublic forum and, in such a forum, the government may impose content-based restrictions that are premised upon "subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral" (*Cornelius*, 473 US at 806; *see generally Peck ex rel. Peck v Baldwinsville Cent. School Dist.*, 426 F3d 617, 632 n 9 [2d Cir 2005], *cert denied* 547 US 1097 [2006]). Here, Hayes limited access to the School for tabling purposes by denying "access to individuals or groups wishing to promote a specific point of view in opposition to any of the institutions of higher education or employers [that the School District] invite[s] onto [its] campus, whether civilian or military." Hayes further stated that the recruitment activities at the School are "limited to communication with students to answer their questions about the colleges and/or military services" and that the School "does not permit any outside parties access to the . . . School to engage in political speech related to college or military service recruitment activities."

The facts underlying the decisions of the United States Court of Appeals for the Eleventh Circuit in *Searcey v Crim* (815 F2d 1389 [1987] [*Searcey I*]) and *Searcey v Harris* (888 F2d 1314 [1989] [*Searcey II*]) are similar to those of this case. In those cases, the defendant school district promulgated a series of regulations applicable to the groups participating in the high school's career day forum, including the plaintiff peace organization (*Searcey II*, 888 F2d at 1320). Among the regulations were "no criticism" and "no discouragement" requirements, which stated that " '[p]articipants shall not be allowed to criticize or denigrate the career opportunities provided by other participants' " and that " '[n]o presenter whose primary focus or emphasis is to discourage a student's participation in a particular career field' may participate" (*id.* at 1322). In *Searcey II*, the Eleventh Circuit determined that the latter requirement was reasonable inasmuch as discouragement detracted from the "motivational purpose" of the career day forum, but it found the result of the former requirement, i.e., the "the total banning of a group from the forum[, ]rather than limiting what a group can say . . .[,] to be unreasonable" (*id.*). After noting the "special force" that applied to weighing the pros and cons of embarking upon a military career, the court further stated that "while avoiding controversial issues justifies prohibiting speakers from discussing the morality of war or defense spending, it does not justify excluding bona fide negative facts [that] are relevant to the requirements or benefits of a specific job, including one in the military" (*id.* at 1323; *cf. Student Coalition for Peace v Lower Merion School Dist. Bd. of School Directors*, 776 F2d 431, 437 [3d Cir 1985]). The Court thus concluded that it was unreasonable for the school district to prohibit a group from presenting negative factual information about the disadvantages of specific job opportunities because the information would be useful in helping students make career choices and, further, the school district could not permit "speakers to point out the advantages of a particular career but ban any speaker from pointing out the disadvantages of the same career. That amounts to viewpoint-based discrimination" (*id.* at 1324).

In my view, the logic employed in the *Searcey* cases is equally applicable here. One of the grounds on which the majority distinguishes *Searcey I* is that it was decided before the enactment of the NCLB. I conclude, however, that the reluctance to lose federal funding under that statute serves to *encourage* secondary schools to provide access to military recruiters but not to *discourage* access to peace activists or organizations. Moreover, as in the *Searcey* cases, respondents' justifications for limiting access to the school, e.g., avoiding debate about a controversial

matter, are facially neutral but capable of concealing bias toward the approach advocated by petitioner. The fact that respondents approved for distribution a single piece of literature, i.e., the Ten Points document, that petitioner sought to present at the school does not support the conclusion that respondents' restriction on access to the school was viewpoint neutral. Indeed, that document was relatively benign. It lacked the detail and honesty inherent in the literature that respondents rejected. The rejected literature included several articles printed in the New York Times that considered the retraining of and pressure imposed upon Army recruiters, the "psychic toll" of the Iraq War, incidents of post-traumatic stress disorder in returning soldiers, the high suicide rate among soldiers and homelessness among veterans. By excluding negative information, respondents acted in a manner that was not viewpoint neutral (*see generally Cornelius*, 473 US at 806).

The majority also attempts to draw a distinction between the career day at issue in the *Searcey* cases and what respondents suggest upon remittal was a "college day." That is a distinction without a difference. The career day at issue in the *Searcey* cases was a forum intended "to provide information to high school students on post-high school career and educational opportunities" (*Searcey I*, 815 F2d at 1394 n 13). The forum at issue here considered almost the exact same topics. Freedom of speech should never be stifled upon such an arbitrary difference.

I further reject the majority's view with respect to the instructive nature of *Rumsfeld v Forum for Academic & Institutional Rights, Inc.* (547 US 47 [2006]) on the facts of this case. I agree with the majority that there is no basis in the record on which to conclude that respondents' compliance with the NCLB amounts to an endorsement of the military's message or creates a forum for military speech. Although the Supreme Court in *Rumsfeld* concluded that various law schools were "not speaking when they host[ed] interviews and recruiting receptions" (*id.* at 64), and it reiterated its view that "high school students can appreciate the difference between speech a school sponsors and speech the school permits . . . pursuant to an equal access policy" (*id.* at 65), that conclusion is of no moment here inasmuch as it is not responsive to the question whether respondents' refusal to permit petitioner access to the School for the reasons set forth in the record is viewpoint neutral. The reasons offered by respondents for denying petitioner's tabling request were unreasonable. Petitioner plainly recognized the "responsibility [of the School District] to provide a safe, healthy

learning environment for the students confided to its care," and was just as lucid in noting that he did not seek to engage in activity "that would disrupt or interfere with the vital education of [the] children." Indeed, petitioner expressed his intent to provide students with what amounted to a balanced view of alternatives to military service, such as AmeriCorps, Peace Corps and International Development. While it is appropriate for the Board of Education "to prohibit political or ideological debate" (*Searcey II*, 888 F2d at 1321), as well as "criticism . . . denigrating the opportunities offered by a specific group" (*id.* at 1324), the strictly factual presentation that petitioner sought to make corresponds with respondents' goal of providing information to students about potential postsecondary education options. In other words, while the proposed presentation of petitioner within the forum was not unlimited in scope, it was consistent with the information that the School's recruiting forum was intended to consider—specifically, students' options after high school graduation.

Finally, I agree with petitioner that respondents acted in an arbitrary and capricious manner. Whether the contention of petitioner with respect to the cause of action alleging arbitrary and capricious action concerns the denial of his tabling request or the denial of what appears to have been his request to observe the military recruiters, I disagree with the majority that respondents' refusal to allow petitioner access to the School under those circumstances is rational (*see generally Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 230-231 [1974]).

Thus, I would reverse the judgment, grant the petition, annul the determination, and direct respondents to grant petitioner's tabling request and request to observe military recruiters. Present—Smith, J.P., Fahey, Carni, Lindley and Sconiers, JJ.